IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LIZA A. JACKSON, | ) | CIVIL NO. 12-00443 HG-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FOODLAND SUPER MARKET, LIMITED, | ) | |
| dba SACK N' SAVE FOODS; JOHN | ) | |
| DOES 1-5; JANE DOES 1-5; DOE | ) | |
| CORPORATIONS 1-5; DOE LLCS 1-5; | ) | |
| DOE PARTNERSHIPS 1-5; DOE NON- | ) | |
| PROFIT ORGANIZATIONS 1-5; and | ) | |
| DOE GOVERNMENTAL AGENCIES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT FOODLAND SUPER MARKET, LIMITED dba SACK N' SAVE FOODS' MOTION FOR SUMMARY JUDGMENT (ECF No. 25)**

Plaintiff Liza A. Jackson, an African-American woman, claims her employer, Defendant Foodland Super Market, dba Sack N' Save Foods, discriminated against her on the basis of race.  Plaintiff seeks relief under Hawaii state laws prohibiting race-based discrimination by employers.

Plaintiff also asserts various other claims, including hostile work environment, intentional infliction of emotional distress, and defamation.  These claims are dismissed with Plaintiff's consent.

Defendant seeks summary judgment on all of Plaintiff's claims.  Plaintiff has failed to show that she was subjected to

discrimination.

Defendant's Motion for Summary Judgment (ECF No. 25) is **GRANTED**.

## PROCEDURAL HISTORY

On November 14, 2011, Plaintiff Liza A. Jackson ("Jackson") filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii. (ECF No. 1-1.)

On August 6, 2012, Defendant Foodland Super Market, dba Sack N' Save Foods, ("Foodland") removed the state court action to the United States District Court, District of Hawaii. (ECF No. 1.)

On April 4, 2013, Defendant filed its Motion for Summary Judgment. (ECF No. 25.) Defendant also filed a separate Concise Statement of Facts in support. (ECF No. 26.)

On May 1, 2013, Plaintiff filed an Opposition to the Motion for Summary Judgment. (ECF No. 29.) Plaintiff also filed a separate Concise Statement of Facts in response to Defendant's Concise Statement of Facts. (ECF No. 30.)

On May 22, 2013, Defendant filed a Reply. (ECF No. 32.)

On June 19, 2013, the Court held a hearing on the Motion for Summary judgment.

## FACTUAL BACKGROUND

Plaintiff Jackson is an African-American woman.

In January 2009, Plaintiff was hired by Foodland to work as a baker. (Complaint at ¶ 4, ECF No. 1-1.) Plaintiff worked the

night shift while employed at Foodland.  (<u>Id.</u> at ¶ 10(a).)

In February 2010, Plaintiff was involved in two on the job incidents with a coworker, Whisper Faaagi.  Faaagi reported both incidents to Foodland management and human resources.  Based on the first incident, Plaintiff received a first written warning notice, dated February 15, 2010, from her supervisor, Rick Chang, for violating the Rules of Conduct, including verbal harassment, derogatory comments, profane language, and derogatory insults.  (Defendant's SCSF at Ex. D, First Warning Notice, ECF No. 26-7.)

After the second incident with Faaagi, Mark Hirokawa, the Assistant Director of Human Resources, issued a second written warning notice indicating the dates of infraction as February 11, 2010 and February 16, 2010.  The warning stated that an investigation by Human Resources confirmed that Plaintiff violated Foodland's harassment, workplace violence, employee communication, and non-retaliation policies.  (<u>Id.</u> at Ex. G, Second Warning Notice, ECF No. 26-10.)

On September 18, 2010, Plaintiff was involved in another incident with a coworker, Medina Scott.  (Complaint at ¶ 10(j), ECF No. 1-1; Declaration of Liza A. Jackson ("Jackson Decl.") at ¶ 8, ECF No. 30-1.)  Scott reported the incident to Foodland management and human resources.  (Declaration of Mark Hirokawa ("Hirokawa Decl.") at ¶ 4, ECF No. 26-3.)

On September 20, 2010, Plaintiff was suspended from work,

pending an investigation by Defendant for allegedly threatening Scott on September 18, 2010.  (Complaint at ¶ 10(b), ECF No. 1-1.)

On October 1, 2010, Plaintiff was terminated from her position as a baker.  (Id. at ¶ 6.)  Assistant Director of Human Resources Hirokawa made the decision to terminate Plaintiff.  (Hirokawa Decl. at ¶ 1-2, ECF No. 26-3.) On October 1, 2010, Plaintiff received a termination letter from Hirokawa which stated that Plaintiff was terminated due to violation of the company policies and house rules regarding workplace violence, personal conduct, and abusive language toward other employees.  (Complaint at ¶ 10(c).)

Plaintiff maintains that she was disciplined for the same conduct that other non-African-American employees engaged in, but were not disciplined for.  (Id. at ¶ 10(e).)  Plaintiff also claims that three other employees violated the workplace violence policy, but were not terminated.  (Id. at ¶ 10(l-o).)

On March 17, 2011, Plaintiff filed a Charge of Discrimination with the Hawaii Civil Rights Commission ("HCRC"), HCRC No. 16342.  (Complaint at ¶ 7, ECF No. 1-1; Defendant's SCSF at Ex. 0, Charge of Discrimination, ECF No. 26-18.)  Plaintiff also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC No. 37B-2011-00026.  (Complaint at ¶ 7, ECF No. 1-1.)

On August 16, 2011, the HCRC issued a Right to Sue Letter. (<u>Id.</u> at  8.)

On September 6, 2011, according to the Complaint, the EEOC issued a Dismissal and Notice of Rights.  (<u>Id.</u>)

On November 14, 2011, Plaintiff filed a Complaint in Hawaii state court.  Plaintiff alleges the following claims: (Count I) Violation of Hawaii Discrimination Laws, (Count II) Hostile Work Environment, (Count III) Infliction of Emotional Distress, and (Count IV) Defamation.

In her Opposition to the Motion for Summary Judgment, Plaintiff consented to have summary judgment granted as to her claims for hostile work environment, intentional infliction of emotional distress, and defamation.  (Opposition at 3, ECF NO. 29.)

Plaintiff's Discrimination claim (Count I) remains at issue.

<b>STANDARD OF REVIEW</b>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for

the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

    If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc.,

6

477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

**ANALYSIS**

**I.   Timeliness**

Pursuant to Hawaii Revised Statute ("HRS") § 368-11, any individual claiming to be aggrieved by an alleged unlawful discriminatory practice may file a complaint with the Hawaii Civil Rights Commission's executive director within one hundred

eighty dates after the date of the alleged discriminatory act. Haw. Rev. Stat. § 368-11.

On March 17, 2011, Plaintiff filed her Charge of Discrimination with the Hawaii Civil Rights Commission. (Defendant's SCSF at Ex. O, Charge of Discrimination, ECF No. 26-18.)  Defendant argues that Plaintiff is time-barred from basing her discrimination claim on any events that took place prior to September, 18, 2010.  (Motion for Summary Judgment at 9, ECF No. 25.)   The one hundred eighty days timeliness requirement applies to the date: "(1) Upon which the alleged unlawful discriminatory practice occurred; or (2) Of the last occurrence in a pattern of ongoing discriminatory practice."  Haw Rev. Stat. § 368-11(c).

Plaintiff does not address the timeliness of her February 2010 allegations in her Opposition.  Viewing all inferences in favor of the non-moving party, the Court will consider the February 2010 allegations as they could arguably relate to a patten of ongoing discriminatory practice.

## II.  Discrimination

Under HRS § 378-2, it is an unlawful discriminatory practice "[f]or any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise discriminate against any individual in compensation or in the terms, conditions, or privileges of employment" because of race.  Haw. Rev. Stat. § 378-2(a)(1)(A).  A claim of discrimination under HRS Chapter 378

is governed by the same test used by the federal courts in Title VII cases.  Schefke v. Reliable Collection Agency, Ltd., 32 P.3d 52, 69-70 (Haw. 2000).

The burden of proof in discrimination cases has been described as follows by the Ninth Circuit:

> [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

A plaintiff may establish a prima facie case of discrimination by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant.  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).  Alternatively, a Plaintiff may proceed under the McDonnell Douglas burden-shifting framework to establish a prima facie case.  Id.  Under McDonnell Douglas, a plaintiff must prove: (1) she belongs to a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).

### A.   Plaintiff's burden to establish a prima facie case of discrimination

Plaintiff concedes that this is not a case of direct evidence of racial discrimination, and therefore she must proceed under the <u>McDonnell Douglas</u> framework.   (Opposition at 8, ECF No. 29.)

### 1.   Plaintiff belongs to a protected class

Plaintiff is an African-American, a protected class under Title VII.

### 2.   Plaintiff has not established that she was performing her job satisfactorily

Defendant claims that Plaintiff's violations of company policies in February 2010 and September 2010 are illustrative of unsatisfactory job performance.   (Motion for Summary Judgment at 15, ECF No. 25-3.)   Plaintiff has not presented any evidence to demonstrate she was performing her job satisfactorily.

A plaintiff who violates company policy and fails to improve her performance despite a warning has not demonstrated satisfactory performance.   <u>See Diaz v. Eagle Produce Ltd. P'ship</u>, 521 F.3d 1201, 1208 (9th Cir. 2008) (citing <u>Mungro v. Giant Food, Inc.</u>, 187 F.Supp.2d 518, 522 (D.Md. 2002).   Plaintiff has failed to establish that her job performance at Foodland was satisfactory.

### 3.   Plaintiff suffered an adverse employment action

It is undisputed that Plaintiff suffered an adverse

employment action, specifically the termination of her employment on October 1, 2010.

### 4. Plaintiff has not shown that similarly situated employees outside her protected class were treated more favorably

"To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011).  Individuals are similarly situated when they have similar jobs and display similar conduct.  Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).  To establish that an employer treated another similarly situated employee more favorably, a plaintiff must produce evidence that the other employee was involved in the same type of offense as the plaintiff yet received a different disciplinary result.  Id.

Plaintiff has only offered her own declaration to support her allegations that she was treated differently than similarly situated employees.  Under Fed. R. Civ. P. 56(c)(4), declarations to support or oppose a motion for summary judgment must be made on personal knowledge.  A district court will not consider an affidavit that is not based on personal knowledge.  Wicker, 543 F.3d at 1178; Ward v. First Federal Savings Bank, 173 F.3d 611 (7th Cir. 1999).  In Wicker, the Ninth Circuit Court of Appeals upheld a district court's decision to strike portions of

11

affidavits not based on personal knowledge.  The appellate court
held that the affidavits lacked any facts demonstrating the
affiants attended the meeting in question, and therefore their
testimony could not be relied upon to recount negotiations that
allegedly occurred at the meeting.  <u>Id.</u> at 1178.

### (a)  Plaintiff's evidence of similarly situated employees

Plaintiff claims that similarly situated coworkers, not in
her protected class, engaged in violent conduct but were not
terminated.  (Opposition at 11, ECF No. 29.)  In her declaration,
Plaintiff states:

- Sean, a male Caucasian dishwasher, struck another female employee, Venus, on her head.  The other employee complained and Sean was suspended for seven days, but was not terminated.  (Jackson Decl. at ¶ 15.)

- Sean harassed two other male employees.  One of the other employees threatened to punch Sean. Another employee, Richard, did hit Sean.  Neither Sean nor Richard were terminated.  (<u>Id.</u> at ¶ 16.)

- Sean also made a sexual comment to another employee, but he was not suspended nor terminated. (<u>Id.</u> at ¶ 17.)

- A Samoan employee, Lazarus, held a knife and threatened another female employee, Joji, because Joji was in his way and Lazarus ordered that she get out of his way.  Lazarus was not disciplined.

(<u>Id.</u> at ¶ 18.)

Plaintiff's declaration does not include any facts
demonstrating that other employees were not disciplined or were
issued warnings rather than being terminated for their allegedly

12

violent behavior.

### (i) Plaintiff's deposition testimony regarding Sean

Plaintiff testified that she heard rumors in the bakery that Sean had made a sexual comment to another worker. (Reply at Ex. A, Deposition of Liza Jackson at 106:11-19, ECF No. 32-2.) Plaintiff also testified that she had no firsthand knowledge about the incident, but had been told by another worker that someone filed a sexual harassment complaint against Sean. (Id. at 106:20-24.) She had no further information about the sexual comment incident.

Plaintiff's allegation that Sean harassed other employees was clarified in her deposition. Plaintiff testified that she witnessed Sean pinch a male employee. (Id. at 107:12-108:1.) Plaintiff could not recall the name of the male employee. (Id. at 107:19-21.) Plaintiff made no mention of anyone named Richard punching Sean after Sean harassed another employee. It is unclear from Plaintiff's testimony if the pinching incident occurred before or after the incident with Venus. (Compare Jackson Decl. at 107:24-108:1 and 120:10-24.) Plaintiff stated she informed Supervisor Rick Chang of the pinch, and Chang told her he would speak to the male employee to hear his version of the events. (Id. at 121:10-22.) Plaintiff does not know what action was taken regarding the pinching incident and she does not know if the incident was brought to the attention of Foodland

13

Human Resources.  (<u>Id.</u> at 121:23-122:1.)

Plaintiff stated she learned of Sean's incident with Venus from Venus.  (<u>Id.</u> at 106:20-24.)  In her deposition, Plaintiff described the incident involving Sean and Venus as Sean "bopped one of the cake decorators upside of her head."  (<u>Id.</u> at 105:20-24.)  Plaintiff testified that she did not know if there was any pending action or past discipline involving Sean at the time of the incident with Venus.  (<u>Id.</u> at 121:6-9.)  Plaintiff testified that Sean did receive discipline for his incident with Venus in the form of seven days suspension.  (<u>Id.</u> at 108:2-4.)

### (ii) Plaintiff's deposition testimony regarding Lazarus

Plaintiff testified that she did not witness the incident with Lazarus, she did not know whether the incident was brought up to Foodland human resources, and she did not know whether there was any prior disciplinary action pending against Lazarus. (<u>Id.</u> at  118:11-119:20.)  Plaintiff cited discussions with her coworker Joji as a source of her information regarding Lazarus. (<u>Id.</u>)

### (b)  Plaintiff has not provided sufficient evidence of similarly situated employees

Plaintiff never witnessed Foodland management disciplining other similarly situated employees.  Without knowledge of the facts, there can be no inference that Foodland did not properly address the other workers' allegedly violent conduct.  <u>See</u> <u>Wicker</u>

14

v. Oregon ex rel. Bureau of Labor, 543 F.3d 1168, 1178 (9th Cir. 2008).

Plaintiff's testimony regarding incidents she did not personally witness is inadmissible because she lacked personal knowledge.  See Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001); U.S. for Use & Ben. of Conveyor Rental & Sales Co. v. Aetna Cas. & Sur. Co., 981 F.2d 448, 454 (9th Cir. 1992)(affidavit submitted by plaintiff in opposition to summary judgment motion was properly excluded by district court, since allegations were not based upon personal knowledge of affiant as required by Fed. R. Evid. 602).

Plaintiff's testimony based on statements by Venus, Joji, and other unnamed bakery personnel is also inadmissible hearsay. Fed. R. Evid. 802.

Plaintiff's general statement that Sean harassed other male employees and was not terminated fails to amount to admissible, specific, and probative evidence that Foodland treated her differently than a similarly situated employee.  See Cafasso, 637 F.3d at 1061; see also Mizraim v. NCL Am., Inc., CIV. 11-00077 JMS, 2012 WL 6569300, *9 (D. Haw. Dec. 14, 2012) reconsideration denied, CIV. 11-00077 JMS, 2013 WL 432926 (D. Haw. Feb. 4, 2013)(plaintiff's conclusory allegations did not establish that other employees received more favorable treatment).

> **(c)  Plaintiff has not established that other workers were similarly situated**

15

Even if Plaintiff's evidence was accepted, she has failed to establish that the other workers were similarly situated. Plaintiff has not established that any other workers had been issued warnings by Foodland prior to their incidents.   Vasquez, 349 F.3d at 641 (other employees were not similarly situated because they did not engage in the same type of offense as the plaintiff).   Conversely, Plaintiff's two February 2010 incidents were reported to Foodland by Faaagi, Plaintiff met with Supervisor Chang and was issued a warning, and Foodland decided to terminate Plaintiff's employment after Scott reported Plaintiff in September 2010 for similar conduct.

To the extent that Plaintiff suspects Foodland was aware of the similar incidents by others, Plaintiff does not provide any explanation describing how Foodland handled the other workers' incidents.   The record is void of any information explaining how Foodland addressed and resolved the alleged Lazurus incident, Sean's alleged sexual comment, and Sean's alleged harassment of the male employees.   Plaintiff's only evidence of disciplinary action is her statement that Sean received a seven-day suspension after the incident with Venus.   Plaintiff has not provided any details as to whether Sean's offense record was similar to hers, or how Foodland handled the investigation of the Venus incident. Plaintiff has not demonstrated that Foodland terminated plaintiff's employment when similarly situated employees were not

terminated for repeat violations of company policy.  <u>Mizraim</u>,
2012 WL 6569300, *9; <u>Day v. Sears Holdings Corp.</u>, Civ. No.
11-09068 MMM PJWX, 2013 WL 1010547, at *9 (C.D. Cal. Mar. 13,
2013)(no evidence that similar situated employees engaged in the
same misconduct as plaintiff without being disciplined).

Plaintiff has failed to meet the second and fourth
requirements of the <u>McDonnell Douglas</u> framework.  Plaintiff has
not presented sufficient evidence to establish a prima facie case
of discrimination.

## B.   Defendant's legitimate non-discriminatory reasons for their actions

The Defendant has met its burden to articulate non-
discriminatory reasons for their February 2010 disciplinary
actions and October 1, 2010 termination of Plaintiff's
employment.

### 1.   February 2010 Disciplinary Actions

On February 14, 2010, Plaintiff was involved in an incident
with her former coworker, Whisper Faaagi.  Faaagi complained to
Foodland Human Resources personnel, including Faaagi and
Jackson's immediate supervisor, Pastry Chef Rick Chang, that
Jackson used repeated vulgarity towards her during their work
shift on February 14, 2013.  (Hirokawa Decl. At ¶ 4; Defendant's
SCSF at Ex. E, ECF No. 26-8.)

Plaintiff admits that she used profane language towards
Faagai, (Plaintiff's SCSF at 2, ECF No. 30), but only

17

specifically admits to having told Faaagi to "take her ass home
with her 20 kids." (Defendant's SCSF at Ex. A, Jackson Deposition
("Jackson Deposition") at 53:5-15, ECF No. 26-4.)  According to
Plaintiff, the verbal confrontation began after Faagai said, in
reference to the type of music Plaintiff was listening to on the
radio, "what are you going to play, your kind of music, boom,
boom, boom." (Defendant's SCSF at Ex. A, Jackson Deposition at
49:7-12.)  Plaintiff interpreted this statement as a racial
remark.  (Compl. at ¶ 10(f), ECF No. 1-1.)  Plaintiff maintains
she said she and Faaagi were not hostile toward one another at
the end of the shift.  (Id.)

After being informed of the February 14, 2010 incident by
both Plaintiff and Faaagi, Foodland conducted an investigation
into the incident.  Supervisor Chang reviewed the emails from
Faaagi, spoke with other employees who witnessed the incident, and
conferred with Foodland Commissary Director Melissa Pou.
(Defendant's SCSF at Ex. E, ECF No. 26-8.)

On February 15, 2013, Supervisor Chang met with Plaintiff
Jackson to discuss the incident.  Jackson submitted a written
statement detailing her account of the incident to Chang.
(Defendant's SCSF at Ex. C, ECF No. 26-6.)  Chang concluded that
Plaintiff Jackson had violated Foodland's rule against verbal
harassment and issued a first written warning notice to Jackson.
The warning notice stated that Plaintiff violated House Rules of

Conduct 7.2.1 "Prohibited Harassment" by using derogatory comments, profane language, and derogatory insults. (Defendant's SCSF at Ex. D, First Warning Notice, ECF No. 26-7.) Plaintiff reviewed the first warning notice, but refused to sign it. In her deposition, Plaintiff explained that she did not sign the written notice because she felt that everyone else in the commissary swore, including Chang, and she was not going to allow Chang to make an example out of her. (Defendant's SCSF at Ex. A, Jackson Decl. at 58:10-17.) In her Complaint, Plaintiff states that she did not sign the written notice because she claims other employees, who were not African-American, swore and had altercations in the workplace, but were not written up. (Compl. at ¶ 10(h), ECF No. 1-1.)

On February 22, 2010, Faaagi sent another email to the Foodland Human Resources Department complaining that Plaintiff confronted her after learning she had reported Plaintiff to management. (Defendant's SCSF at Ex. E, Email from Whisper Faaagi, dated February 22, 2010, ECF No. 26-8.) Faagai characterized Jackson's actions as intimidating and confrontational. (Id.) After Jackson told Faaagi, "I thought you could fight your own battles," Faaagi told their shift supervisor that she did not want to work with Jackson and Faaagi then left work early. (Defendants' SCSF at Ex. A, Jackson Deposition, 61:2-19.) Plaintiff admits she made negative remarks to Faaagi after

19

learning that Faaagi had reported her to management.  (Plaintiff's
SCSF at 2, ECF No. 30; Defendant's SCSF at ¶ 5, ECF No. 26.)

     After the second confrontation, Assistant Human Resources
Director Hirokawa was notified by Commissary Director Pou of the
two incidents between Jackson and Faaagi.  Hirokawa reviewed a
seven-page fax from the store management documenting the two
incidents.  (Hirokawa Decl. at ¶ 4.)  The fax included emails from
Faaagi complaining of Jackson's conduct, notes made by Jackson,
notes from Supervisor Chang, an email summary of the incidents
from Supervisor Chang, and a copy of the first written warning
notice.  (Id.)  Hirokawa then concluded that Plaintiff had
violated Foodland's employee policies and issued a second warning
notice to Plaintiff.  The second warning notice listed the dates
of the two infractions and stated: "FIRST AND FINAL WARNING.  Any
further violation of any of the referenced policies will result in
further disciplinary action, including, but not limited to,
termination."  (Defendant's SCSF at Ex. G.)

     Defendants have offered a nondiscriminatory explanation for
the disciplinary actions.  After investigating the two incidents
between Jackson and Faaagi, Foodland concluded that Plaintiff
violated Foodland's harassment, workplace violence, employee
communications, and non-retaliation policies based on her actions
towards Faaagi.  (Defendant's SCSF at Ex. G, Second Warning
Notice, ECF No. 26-10.)

### 2.   Termination of Employment

On September 18, 2010, Plaintiff was involved in an incident with a coworker, Medina Scott.  (Id. at  10(j); Jackson Decl. at ¶ 8.)  Plaintiff claims she told Scott that a pie had been baked for employees out of ingredients that were going to be thrown away. (Jackson Decl. at ¶ 8.)  Plaintiff alleges that Scott then started an argument with Plaintiff for trying to "set her up" because employees were not supposed to eat store food products.  (Id.) Scott reported Plaintiff to management.  In response, Plaintiff allegedly raised her voice and spoke and acted in a threatening manner towards Scott. (Defendant's SCSF at Ex. B, Termination of Employment letter dated October 1, 2010, ECF No. 26-5.)  In the verbal encounter with Scott, Plaintiff states she told Scott that she understood why her teammates did not like Scott, because Scott was always complaining or telling on someone to management. (Defendant's SCSF at Ex. C, Handwritten statement by Liza Jackson, ECF No. 26-6.)

On September 20, 2010, Plaintiff was suspended pending an investigation of the incident with Scott.  (Hirokawa Decl. at ¶ 3.)

On October 1, 2010 Hirokawa terminated Plaintiff's employment and sent Plaintiff a letter explaining the reasons for her termination, dated October 1, 2010.  (Defendant's SCSF at Ex. B, Termination Letter, ECF No. 26-5.)

21

Defendants have offered a nondiscriminatory explanation for terminating Plaintiff's employment.  Hirokawa states he made the decision to terminate Jackson after reviewing written statements obtained from Jackson and her co-workers regarding the September 18, 2010 incident with Scott.  Hirokawa concluded that Plaintiff engaged in abusive and retaliatory behavior toward Scott. (Hirokawa Decl. at ¶ 3.)  The September 2010 incident and the earlier similar incident with Faaagi in February 2010 provided the basis for her termination. (Id.)  Hirokawa states that the basis for his decision to terminate Jackson was fully consistent with discipline he previously imposed for similarly situated employees. He cited, as an example, another non-African-American employee who was terminated in February 2009 after Jackson had complained that the employee used abusive language toward her.  (Id. at ¶ 8; see also Defendant's SCSF at Ex. M, Termination Letter to Kelly Pinol, dated February 13, 2009, ECF No. 26-16.)

Defendant has met its burden to articulate legitimate nondiscriminatory reasons for its disciplinary actions and termination of Plaintiff's employment.

## C.  Plaintiff has failed to carry her burden to show Defendant's proffered reasons were pretextual

The evidence required to show that an employer's explanation is a pretext for discrimination has been described as follows.

> If the employer [offers a nondiscriminatory reason for
> its action], the plaintiff must show that the articulated
> reason is pretextual "either directly by persuading the

court that a discriminatory reason more likely motivated
the employer or indirectly by showing that the employer's
proffered explanation is unworthy of credence." Although
a plaintiff may rely on circumstantial evidence to show
pretext, such evidence must be both specific and
substantial.

Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th

Cir. 2002) (citations omitted); see also Wallis, 26 F.3d at 890

(citations omitted) (refuting the suggestion that a plaintiff may

defeat summary judgment by merely making a prima facie case).

1.   **Plaintiff has not presented any specific and substantial
     evidence to show pretext**

Plaintiff has not carried her burden to show that Foodland's

disciplinary actions and decision to terminate her employment were

motivated by racial bias.  Plaintiff asserts that Foodland was

racially motivated because other employees used swear words and

engaged in violent behavior in the workplace without being

disciplined.  (Opposition at 9.)  Plaintiff has only offered her

own declaration to support her allegations that Foodland's actions

were motivated by racial bias.  (Jackson Decl., ECF No. 30-1.).

The portions of Jackson's declaration discussing other employees

using profane language and/or violating the violence policy are

inadmissible under Fed. R. Evid. 602 and Fed. R. Civ. P. 56

because her testimony is not based on personal knowledge.  Block,

253 F.3d at 419.  The general, non-specific allegations contained

in Plaintiff's declaration also fail to carry her burden of

establishing pretext.  Cafasso, 637 F.3d at 1061

**2.   Plaintiff's claim that she did not receive the second written warning notice does not create a genuine issue of material fact and does not establish pretext**

Plaintiff attempts to create a genuine issue of material fact by stating that she did not receive the second written warning notice which contained the "First and Final Warning" language in February 2010.  (Jackson Decl. at ¶ 13.)  Plaintiff claims that "Defendants fabricated this document . . . for the sole purpose of furthering its pretext for terminating Plaintiff."  (Opposition at 12.)  Plaintiff's argument is unconvincing.  She admits that he spoke with Supervisor Chang after the initial incident with Faaagi.  Even though Plaintiff refused to sign the first warning from Chang, she does not deny that she was told she violated company policies.  Further, in determining whether an employer's proffered justification for an adverse employment action was false, courts "only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'"  <u>Villiarimo</u>, 281 F.3d at 1063.  It is not important whether the employer's beliefs were objectively false, but rather the employee must present evidence that the employer did not honestly believe its proffered reasons.  <u>Id.</u>  Plaintiff has not demonstrated that Foodland management, specifically Supervisor Chang and Assistant Human Resources Director Hirokawa, did not honestly believe that Plaintiff had violated Foodland's policies during her February and September 2010 incidents with her

coworkers.

### 3.   Defendant has negated a showing of pretext

#### (a)   Defendant terminated a similarly situated coworker for using profanity

Evidence that a similarly situated employee was treated in a similar manner as a plaintiff negates a showing of pretext. Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001).  Foodland presented evidence that another similarly situated coworker was fired after Plaintiff complained that he used abusive language toward her.  Plaintiff admits that a coworker was terminated in February 2009 for violence and cursing at her.  (Jackson Decl. at ¶ 5.)  Foodland has negated a showing of pretext.

#### (b)   Defendant hired a replacement baker who is of the same race as the Plaintiff

Evidence that the person hired is of the same sex or race as the plaintiff is extremely helpful to the defendant's rebuttal in supporting an nondiscriminatory justification for its employment action.  Hannon v. Chater, 887 F. Supp. 1303, 1313 (N.D. Cal. 1995).

Foodland hired Plaintiff's daughter, an African-American, as her replacement in the bakery.  In her deposition, Plaintiff stated that she had referred her daughter to Supervisor Chang, who agreed to hire her daughter in the commissary.  Plaintiff admits Chang made this decision before the September 2010 incident, but

Foodland put the hiring on hold when the incident with Scott occurred.  (Defendant's SCSF at Ex. A, Jackson Dep. at 127:1-129:23, ECF No. 26-4.)  Foodland later hired Plaintiff's daughter as her replacement.  Plaintiff believed Foodland was motivated by cost cutting when they fired her, and her daughter was hired at a rate of $9 per hour, versus Plaintiff's pay rate of $12 or $13 per hour.  (Id. at 127:20-128:11.)  At the hearing, Plaintiff's counsel claimed Plaintiff's daughter was hired to "cover up" Defendant's discriminatory actions because the daughter was hired only temporarily.  In her deposition, however, Plaintiff stated she believed her daughter was fired after a little over a year of employment at Foodland because of her attendance.  (Id. at 129:6-23.)

Foodland's nondiscriminatory justification for its employment action against Plaintiff is supported by its hiring of Plaintiff's daughter, an African-American, as her replacement in the bakery.

**(c)  One of Plaintiff's supervisors was African-American**

When a decision maker is in the same racial group as the employee complaining about an adverse decision, "the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about."  Holston v. Sports Auth., Inc., 136 F. Supp. 2d 1319, 1335 (N.D. Ga. 2000) aff'd, 251 F.3d 164 (11th Cir. 2001).

26

Foodland's lack of pretext is also supported by the fact that one of Plaintiff's supervisors involved in her suspension and termination, Joe Adorno, was African-American.  Plaintiff admits that Adorno self-identified as African-American.  (Defendant's SCSF at Ex. A, Jackson Deposition, 74:3-75:1.)  Adorno participated in Plaintiff's suspension and investigation following the September incident, and received Plaintiff's statement regarding the incident.  (Id. at 139:17-140:15.)

Plaintiff has not shown that Foodland's explanations for its employment actions were pretextual.

Plaintiff did not meet her burden to establish a prima facie case of discrimination.  Even assuming Plaintiff established a prima facie case, Defendant presented legitimate nondiscriminatory reasons for its disciplinary actions in February 2010 and for its decision to terminate Plaintiff on October 1, 2010.  Plaintiff failed to meet her burden to show these reasons were a pretext for a discriminatory motive.  Defendant is entitled to summary judgment as to the discrimination claim.

## CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED**.

Plaintiff consents to the granting of summary judgment as to the following claims: (Count II) Hostile Work Environment, (Count III) Infliction of Emotional Distress, and (Count IV) Defamation.

Defendant's Motion for Summary Judgment is **GRANTED** with

respect to (Count I) Violation of Hawaii Discrimination Laws.

There are no remaining claims or parties herein.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and to close the case.

IT IS SO ORDERED.

DATED:    July 25, 2013, Honolulu, Hawaii.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

LIZA A. JACKSON v. FOODLAND SUPER MARKET, LIMITED, dba SACK N' SAVE FOODS; CIV. NO. 12-00443 HG-RLP; **ORDER GRANTING DEFENDANT FOODLAND SUPER MARKET, LIMITED dba SACK N' SAVE FOODS' MOTION FOR SUMMARY JUDGMENT (ECF No. 25)**